Let's proceed with counsel in Richard Armstrong v. Commissioner of Social Security. Thank you. Mr. Armstrong, you're up. Hi, Your Honor. If it pleases the Court, I would like to take this opportunity to explain why this Court did not properly weigh the evidence in this case. The severity of my disease was acknowledged by many doctors and was grossly explained in all medical evidence that was provided to the Court. Chronic venous insufficiency is a slow, progressive disease that takes many years to get completely exhausted to the severity that is documented in the medical records during 1998. My medical records from Dr. Spinski's office were extremely difficult to acquire. This office has many, many records and documentation to my severe illness but will not allow me to obtain them. I have slowly obtained more records as this case has been ongoing. However, it is simply not enough to prove to the Court how long I have suffered from this disease. I have seeked out treatment, but unfortunately there is no treatment for this disease except compression garments, which I can't wear, and leg elevation. Simple tasks like getting out of bed, bathing, dressing, and eating are a constant struggle. Standing, walking, and sitting are a luxury to me. Not a day goes by that I'm not in constant pain, even when my legs are elevated in bed. I've spent more than half my life laying in bed at a 45-degree angle. Before December 1998, doctors have noted that I have been suffering a long time of chronic venous insufficiency. It did not appear out of nowhere. During the time period of September 1998 and December 1998, the doctors have used words like, in their descriptions of my illness, like tremendous, exasperated, intense, severe, invasive, eruption, and draining. My disease had already begun 20 years prior to 1998, and for 18 months prior to December 1998, it became exacerbated. And that would be on page 14 if you read Dr. Kahn's letter. Doctors remarked to continue with compression stockings and bed rest with leg elevation. I was confined to a bed at home. My life has continued to be a struggle with this disease. I was fortunate enough to have family to take care of me. I'm seeking for this court to review the medical evidence to its capacity and make a ruling of disabled. This disease has stripped away my pride and my dignity, and I'm being punished for not going straight down to Social Security in 1998. I received support from my family. In return, I need to swallow my pride and ask for disability. Well, I feel that the medical evidence was not weighed properly and that the severity of my disease in 1998 was unacknowledged. With the letter from Dr. Kahn dated 11-10-98, while at the hospital he stated that I was essentially bedridden. I intermittently get better and then get severely acute where I am bedridden. My testimony with the ALJ judge, I said that I was a bedridden for years. The judge said I was far-reaching. I was not dramatizing my illness. The court has desperately held on to my words that I worked at my family's florist. I did not work there. I tried to help occasionally. However, my attempts put me right back into bed. The pain I endured was extremely tremendous, and I haven't worked. My complete and utter breakdown came when I had a vein strip in March of 2011. I couldn't take the pain and suffering anymore and had stripping that was suggested in 1998. The doctors could not say whether or not it would make my pain easier. After the operation, it was when I turned to alcohol to try to ease my pain. I became too unbearable. I stopped drinking and had a letter from my primary care physician stating that my disease is not from alcohol. It's not hereditary and it's not from diabetes. It was from being hit by a car when I was 15 years old. It damaged my veins. There was no recovery from chronic venous deficiency. The listing for the impairments have been argued. I'm not going to get to the finish. These impairments have been documented with medical evidence. Severity of their impairments have been met with medical evidence. These impairments are chronic, lasting more than three months. Through medical evidence, these impairments are still ongoing. Any reasonable mind would agree. I am asking for a favorable decision based on the years of medical evidence before you. I feel it was an unfair hearing and that the judge did not weigh the evidence properly. The pictures of my legs that were submitted to the courts would firmly discredit the findings of the state doctors. Any reasonable mind could think that I can sit, walk, stand, lift 20 pounds, work a full-time job looking at the pictures. I am sure I cannot kneel and crawl. That's what I can't do. If looking at my legs in these pictures doesn't bring to mind the words like severe, intense, exasperated, I do not know what would. I would think that a cane might be helpful. My doctors completely disagree with your state doctors, yet you documented their findings for four pages and briefly touched on my medical doctor's findings. Thank you for your time. Thank you, Mr. Armstrong, very much. We'll hear from counsel for the Acting Commissioner of Social Security. Thank you, Your Honor. May it please the Court, my name is Robert Schumacher. I'm an assistant United States attorney with the Eastern District of New York, and I'm here today on behalf of the Acting Commissioner of Social Security. Here the district court found that the administrative law judge's decision on plaintiff's case, which found that Mr. Armstrong was not entitled to disability insurance benefits, applied the correct legal standards, and was based on substantial evidence. What can you tell us about these photographs to which Mr. Armstrong refers, which appear in the appendix at pages 32. Your Honor, we have, and I'm aware of the photographs, we understand that Mr. Armstrong has had significant medical issues throughout his life. However, the issue in this case is whether or not he is able to prove disability or was able to prove disability in a very finite period of time. April 10, 1998 through December 31, 1998. I don't believe that those photographs relate to that time period. What period do they relate to? They're not time stamped, Your Honor. I'm not sure I can answer that question. They were submitted, I believe, by the claimant. There's a lot of medical evidence in the record. Those pictures were before Judge Feuerstein? I don't believe they were. Were you counsel in the district court? Yes, I was, Your Honor. All right. So you can tell us whether or not they were before Judge Feuerstein. Yes. The answer is no, they were not. What was before Judge Feuerstein was the transcript of the administrative record, which include all the medical evidence therein. So I don't believe that those. Understand that in this case there was constantly submissions, supplements from, and again, I would try to get back to the issue that I would raise. Because photographs that may not be in that period may nonetheless tell us something about that period. Data outside of a certain time. Understood, Your Honor. And again, I'm saying that we're talking about 18 years ago. In an 18-month period, 18 years ago. That's the issue in this case. If, and again, hypothetically, these photographs are, let's say, from 2011, 2012, 2013. I understand. But that's why I'd like to know when they are from. Yes. I believe that the claimant can answer when those pictures were taken. But they were not part of the transcript of the administrative record, which was before Judge Feuerstein. Why are they in the appendix? Because we received supplemental documents and we submitted them to the court. We want to be very forthcoming, and we want the court to review all the supplemental evidence. Wait a minute. Who's we and which court are you talking about? Was this, my first question was extremely simple. Were these photographs before Judge Feuerstein? That's not complicated. What kind of a hearing, if any, did Judge Feuerstein have? Probably none. There was no hearing, Your Honor. It was on submission. It was on submission. Correct. And, therefore, the material on submission did not include these. Let me show you what it did include, Your Honor. Okay. Again, a transcript of medical records spanning. Please, please, please. Why don't you bring in a wheelbarrow? Well, I just want to, you know, we are sympathetic. Just answer the question, for God's sake. We are sympathetic to the plaintiffs. I'm not asking you to be sympathetic. Sorry, I'm speaking for myself only. No sympathy. I'm just trying to find out whether Judge Feuerstein had these before. That's all. And I don't know how you can come here, in effect, directing us to this order at page 35 and not able to answer a simple question. Give me a break. I think I've answered it. I don't believe they were submitted to Judge Feuerstein, Your Honor. And in a Social Security case, understand at the district court level, it's a record review case, which is. Please, please. I was a district judge for 15 years. Don't belabor the obvious. I understand, Your Honor. But the, the, it is the review of whether or not the certified transcript and the medical records, whether that proves the disability. That's the review at the district court level. We don't believe, and we don't, we think that the administrative law judge is finding. But if, just answer this. Please. If we believe that these photographs, if they are at a time when they could speak to the period that is relevant, and we understand that's a short period, but we don't know whether they can speak to that period because we don't know when they were taken. I think. If we believe that that is so, do we have authority, if we wish to, to send back and say to Judge Forrestine, if they were not before Judge Forrestine, find out when these photographs were taken and see if they tell you something about that time. I understand that if they were not before the judge, the judge couldn't decide on the basis. But do we have authority to say now, if they weren't there, these should have been considered, given that this is a pro se? Your Honor, your Honor certainly has the authority to send a case back and make the direction to the court. However, I would point to what was reviewed in the transcript, and that's the clinical findings. And I understand these are photographs. The clinical findings and medical records from the appropriate period of time in 1998. And if you look at those records, they paint a different picture than what the, I would say, more severe records paint that post-date this 1998 period. In 1998, I understand the claimant was in the hospital for a period of time. There were records that from the appropriate period of time that post-date that hospitalization that would paint a very different picture of claimant's claim that he was bedridden. He met with his doctors. They don't say that he was under any kind of severe disabling limitations. And under the regulations, he has to show that he had a 12-month duration of disabling limitations, and he did not do so. And on that basis, we believe that the courts, the district court's judgment should be affirmed. Thank you. Thank you.